**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**


**CHERYL MARIE WOMACK,**
**VEST CALVIN WOMACK**

    *Appellants-Debtors*,

                                          **Case No.  SA-22-CV-00965**

**v.**

**TEXAS CAPITAL BANK, N.A.**

    *Appellee-Creditor*.


## ORDER AFFIRMING BANKRUPTCY COURT'S ORDER GRANTING NONDISCHARGE OF DEBT

        Appellants-Debtors Cheryl Marie Womack and Vest Calvin Womack appeal the United States Bankruptcy Court's final judgment, finding debts owed by the Womacks to Appellee-Creditor Texas Capital Bank are nondischargeable. *See* ECF No. 1. The Womacks also challenge the Bankruptcy Court's decision to allow Texas Capital Bank to amend its complaint. *Id*. For the reasons that follow, the Court **AFFIRMS** the Bankruptcy Court's decision on both matters.

### BACKGROUND

        This case arises from a dispute between the Womacks, a married couple who co-owned the small business ME Interests, LP (d/b/a First Service Technology), and their lender Texas Capital Bank. When it was still in business, ME Interests provided technology installation and maintenance services to schools across Texas. Mr. Womack is a businessman with decades of experience in finance. Mrs. Womack is an educator who has worked as a teacher and school principal. ME Interests was experiencing a period of growth following the 2016 publication of a

San Antonio Business Journal article that featured the company as a woman-owned small business to watch. On September 28, 2017, ME Interests obtained a $1.33 million Small Business Administration (SBA) loan from Texas Capital Bank to refinance its debt and obtain operating capital. The term was ten years and the Womacks personally guaranteed the loan. They also signed a loan agreement promising, pursuant to SBA requirements, to continue to be involved in the "day-to-day executive management" of the business and to sell "no more than 10%" of their ownership interest in the company.

Soon after obtaining the SBA loan, Mr. Womack began working with the brokerage firm Benchmark International to market ME Interests to potential buyers. In December 2018, a little over a year after Texas Capital Bank issued the loan, and in violation of the parties' agreement, the Womacks sold 85% of ME Interests to a company called Restoration Risk Management, LLC. Mr. Womack initially planned to continue working for ME Interests as a consultant; however, after a falling out with the new buyers, he was locked out of the company's offices. The Womacks also admitted that, even though they both promised to remain involved in ME Interests' day-to-day management, Mrs. Womack was never involved in the company's day-to-day management. Mr. Womack gave conflicting testimony on whether Mrs. Womack was ever the majority owner of ME Interests, but ultimately admitted her lack of involvement led to their decision not to pursue official designation as a majority woman-owned business. Bank officials suspect Mr. Womack obtained the SBA loan to consolidate debt and make ME Interests more desirable to potential buyers, though Mr. Womack denies that was the case.

Now ME Interests is no longer in business, the SBA loan is in default, and the Womacks have filed for Chapter 7 Bankruptcy. Texas Capital Bank brought the adversary proceeding that gave rise to this appeal, alleging the remaining loan debt is nondischargeable in bankruptcy

2

under 11 U.S.C. § 523(a)(2)(A) because the Womacks obtained the loan under "false pretenses, a false representation, or actual fraud." After a one-day bench trial, the Bankruptcy Court found the debt is nondischargeable because the Womacks gave false representations to the bank about Mrs. Womack's involvement in ME Interests and committed actual fraud in misleading the bank about their plans to sell the company. The Womacks do not dispute that they breached the covenants in their loan agreement with Texas Capital Bank by selling more than 10% of their ownership in ME Interests and failing to be involved in its day-to-day management. They argue on appeal that the record evidence is insufficient to show they made false statements or committed actual fraud under § 523(a)(2)(A). For the reasons discussed herein, this Court disagrees, and affirms the Bankruptcy Court's decision.

## STANDARD OF REVIEW

When reviewing an order of the bankruptcy court, this Court functions as an appellate court, applying the standard of review generally applied in federal courts of appeals. *Webb v. Reserve Life Ins. Co.*, 954 F.2d 1102, 1103–04 (5th Cir. 1992). Former Bankruptcy Rule 8013 outlined the standard of review district courts apply to orders and judgments issued by the bankruptcy court.[1] Former Rule 8013 states:

> On an appeal, the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Frmr. Fed. R. Bankr. P. 8013.

---

[1] Although the 2014 amendments removed former Rule 8013, courts continue to reference it for the traditional standards of appellate review. *See In re Salubrio, LLC*, SA-21-CV-0476-JKP, 2022 WL 3142366 at *4 n.3. (W.D. Tex. Aug. 5, 2022).

Therefore, the bankruptcy's court factual findings may only be reversed by the reviewing court if they are clearly erroneous. *Sequa Corp. v. Christopher*, 28 F.3d 512, 514 (5th Cir. 1994). A finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). But when a bankruptcy court premises a finding of fact upon an improper legal standard, that finding loses the insulation of the clearly erroneous rule. *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir. 1991).

Unlike factual findings, district courts review a bankruptcy court's legal conclusions *de novo*. *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). Under the *de novo* standard, the district court is required "to make a judgment independent of the Bankruptcy Court's without deference to that court's analysis and conclusions." *Lawler v. Guild. Hagan & Clark, Ltd. (In re Lawler)*, 106 B.R. 943, 952 (N.D. Tex. 1989).

## ANALYSIS

In this case, the Womacks argue the Bankruptcy Court erred in finding they made false statements and engaged in actual fraud, rendering their debt nondischargeable under 11 U.S.C. § 523(a)(2)(A). Specifically, they challenge the Bankruptcy Court's finding that they falsely represented Mrs. Womack's involvement in ME Interests, and committed actual fraud in misrepresenting their plans to sell ME Interests. They further argue that because the Bankruptcy Court erred in finding the Womacks' debt is nondischargeable, it also erred in awarding a nondischargeable judgment and attorneys' fees. Finally, the Womacks argue the Bankruptcy Court improperly allowed Texas Capital Bank to amend its complaint on the day of trial. The

Court first addresses the amended complaint before moving on to whether the debt is nondischargeable.

## I.      Amended Complaint

The Womacks suggest the Bankruptcy Court improperly allowed Texas Capital Bank to amend its complaint on the day of trial. Specifically, the bank moved to add the following sentence to its complaint: "The Defendants knew at the time the representations were made that they were false, false pretenses or fraud." *See Plaintiff's Motion for Leave to Amend*, ECF No. 2-2 at 275. The bank requested this amendment to add the previously omitted intent element to its § 523(a)(2)(A) cause of action. The Womacks note the bank's motion to amend was offered five days before trial, after the deadline set by the Bankruptcy Court's scheduling order. They say the delay unfairly prejudiced them and the bank failed to show good cause for the delay. Courts review a bankruptcy court's decision to grant a motion for leave to amend a complaint under the highly deferential abuse of discretion standard. *Matter of Southmark Corp.,* 88 F.3d 311, 314 (5th Cir. 1996). After reviewing the parties' briefings, the trial transcript, and the applicable law, the Court concludes the Bankruptcy Court did not abuse its discretion in granting the bank's motion.

Federal Rule of Bankruptcy Procedure 7015 applies Federal Rule of Civil Procedure 15 to amended pleadings in adversary proceedings. Rule 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." In the Fifth Circuit, "the touchstone of the inquiry under rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997). Rule 15(a) "evinces a bias in favor of granting leave to amend," and a

trial court will not withhold such leave without a "substantial reason." *Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004) (internal quotation marks omitted).

In this case, the Bankruptcy Court found the Womacks were not prejudiced by the amendment because they had ample notice of Texas Capital Bank's intent to amend its complaint. The Bankruptcy Court first notified the bank of a deficiency in its pleading when it denied the parties' cross motions for summary judgment. Specifically, the Bankruptcy Court informed the bank it failed to plead the intent element required by the Fifth Circuit in § 523(a)(2)(A) actions. The parties agree that, in response to the Bankruptcy Court's concern, they included the intent element in their joint pretrial order. *See Joint Pretrial Order*, ECF No. 2-2 at 253. Texas Capital Bank argues the pretrial order, which was filed almost four months before trial, sufficiently put the Womacks on notice of its intent to amend its complaint. Indeed, "[i]t is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." *Branch-Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir. 1991) (citation omitted). As the Bankruptcy Court explained, "the pretrial order puts everyone on notice about what is going to be tried." *See Trial Transcript*, ECF No. 2-3 at 22. The Bankruptcy Court accepted the bank's explanation that its motion to amend was simply a "belt and suspenders" approach, since the amendment was already incorporated through the joint pretrial order. *Id*. at 25.

The Bankruptcy Court did not abuse its discretion in granting the motion. The Womacks had ample notice of the bank's intent to amend its complaint and the parties' joint pretrial order governs the issues to be presented at trial. The Bankruptcy Court's decision to allow the amendment is, therefore, affirmed.

## II.        False Representations and Actual Fraud

The Womacks argue the Bankruptcy Court erred in finding they (1) falsely represented Mrs. Womack's involvement in ME Interests and (2) committed actual fraud in misrepresenting their plans to sell ME Interests, rendering their debt nondischargeable under § 523(a)(2)(A). The Womacks further argue that, because the Bankruptcy Court's findings were erroneous, the Bankruptcy Court erroneously entered a nondischargeable judgment against them and awarded the bank attorneys' fees. Because the Court affirms the Bankruptcy Court's findings, it need not address the propriety of the judgment and attorneys' fees.

Under § 523(a)(2)(A), debts "for money, property, services, or an extension, renewal, or refinancing credit" are not dischargeable if the debt was "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). For a creditor to succeed in a nondischargeability action under § 523(a)(2)(A), the creditor must prove (1) that the debtor made a representation; (2) that the debtor knew was false; (3) that the debtor made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied upon; and (5) that the creditor sustained a loss as a "proximate result" of its reliance. *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) (citing *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001)). The creditor must prove all five elements by a preponderance of the evidence. *Id*.

A false representation or false pretense under § 523(a)(2)(A) consists of (1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that the creditor relied upon. *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). A representation is fraudulent if the debtor "knows or believes" that the information is not as represented, or "does not have the basis for his representation as stated or implied." *In re Mercer*, 246 F.3d at 407.

In this case, the Bankruptcy Court found the debt nondischargeable based on the Womacks' false representation, in their loan agreement, that they both actively participated in ME Interests' management. The Bankruptcy Court further found evidence of actual fraud in the Womacks' promise not to sell ME Interests. The Court reviews the Bankruptcy Court's factual findings for clear error. *Sequa Corp.*, 28 F.3d at 514. In particular, courts of review "give deference to the bankruptcy court's determinations of witness credibility." *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009). This is because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Roark v. Deposit Guar. Nat. Bank,* 15 F.3d 1078 (5th Cir. 1994) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

### A. Cheryl Womack's Involvement in ME Interests

The Womacks argue the record evidence is insufficient to support the Bankruptcy Court's finding that the Womacks made false representations to the bank in order to secure the loan. Section 5.8 of the parties' loan agreement provides the Womacks "shall not, at any time for any reason, cease to be involved in the day-to-day executive management of [ME Interests], except by reason of death, disability or retirement." *See Loan Agreement*, ECF No. 2-2 at 61. The Bankruptcy Court found this covenant suggests both Womacks were actively involved in the day-to-day management of ME Interests when they signed the loan agreement—a fact which was later proven false by their testimony at trial. *See Bankruptcy Court's Memorandum Opinion and Order*, ECF No. 2-2 at 320. Specifically, Mrs. Womack testified she worked full time as an educator and was only marginally involved in ME Interests' operations. *Id*. On appeal, the Womacks argue the bank did not reasonably rely on the statement in the parties' loan agreement that Mrs. Womack was involved in the day-to-day management of the business because bank

officials knew she worked full time as an educator. They fail to explain, however, why Mrs. Womack's employment as an educator would preclude her from being meaningfully involved in ME Interests' day-to-day management. As the Bankruptcy Court notes, the Womacks highlighted Mrs. Womack's role as an educator in conversations with the bank, claiming her connections helped market their services to schools. *Id.* at 322. Furthermore, the bank had no reason to doubt Mrs. Womack's involvement in ME Interests given the recent San Antonio Business Journal article depicting the company as a woman-owned business headed by Mrs. Womack. *Id.* at 321.

The Bankruptcy Court did not clearly err in finding Mrs. Womack made false statements about her involvement in ME Interests. Because the record evidence shows the Womacks signed an agreement suggesting they were both involved in the day-to-day management of the company—a fact Mrs. Womack later admitted at trial was not true—this Court is not "left with a firm and definite conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395.

**B.  The Womacks' Plans to Sell ME Interests**

The Womacks further challenge the Bankruptcy Court's finding that the Womacks committed actual fraud by misleading Texas Capital Bank about their intentions to sell ME Interests. Under section 5.8 of the loan agreement, the Womacks promised not to sell more than 10% of their interest in the company. *See Loan Agreement*, ECF No. 2-2 at 61. The Womacks also signed a security agreement promising not to sell any of ME Interests' collateral without the prior written consent of Texas Capital Bank. *See Security Agreement*, ECF No. 2-2 at 71. The parties do not dispute that the Womacks sold ME Interests, without notifying Texas Capital Bank, about a year after they signed the loan and security agreements. The Bankruptcy Court

found evidence that, despite their statements to the contrary, the Womacks intended to sell their company in violation of the agreements all along. *See Memorandum Opinion and Order*, ECF No. 2-2 at 323. Indeed, the Bankruptcy Court found, in hindsight, "the loan consolidation was not for the benefit of the company, [but rather], to make ME Interest[s] more desirable for purchasers." *Id*.

On review, this Court defers to the Bankruptcy Court's assessment of the credibility of the witnesses at trial. *In re Duncan*, 562 F.3d at 695. The Bankruptcy Court found Mr. Womack's testimony to be "often evasive, inconsistent and hard to follow," ultimately finding it "less credible." *See Memorandum Opinion and Order*, ECF No. 2-2 at 310. The Bankruptcy Court similarly found some of Mrs. Womack's responses to be "evasive." *Id*. at 314. In contrast, the Bankruptcy Court found the bank's witness, Clyde Thompson, to be "forthcoming." *Id*. at 309. The Womacks attack Mr. Thompson's testimony as insufficient to support the Bankruptcy Court's findings because Mr. Thompson was not personally present when they signed the loan agreement. They say that although Mr. Thompson testified that he believed the Womacks' intended to sell ME Interests all along, he offered no evidence to support that belief. The Bankruptcy Court, however, did not rely on Mr. Thompson's testimony to assess the Womacks' intent.

Rarely will a debtor admit to incurring a debt under false pretenses. Therefore, in a case such as this, "where a debtor testifies as to [his] subjective intent, the bankruptcy court must make a credibility determination, considering the debtor's testimony, along with other objective circumstantial evidence of the debtor's subjective intent." *In re Mercer*, 246 F.3d 391, 409 (5th Cir. 2001). Mr. Womack testified that he did not intend to sell ME Interests when he entered into the loan agreement, but the Bankruptcy Court found his testimony lacked credibility. The court,

therefore, relied on circumstantial evidence of his subjective intent. Namely, the court pointed to Mr. Womack's testimony that before he entered into the loan agreement, ME Interests was often solicited by potential buyers in response to the business article highlighting the company. *See Memorandum Opinion and Order*, ECF No. 2-2 at 323. The Bankruptcy Court also noted the speed with which Mr. Womack began marketing his business to potential buyers after entering into the loan agreement, as evidence that he intended to sell it all along. *Id*. Based on this evidence, the Bankruptcy Court concluded the Womacks "had no intention of fulfilling the covenants made in either the Loan or the Security Agreement." *Id*.

This Court, affording deference to the Bankruptcy Court's credibility determinations, finds the Bankruptcy Court did not clearly err in so finding. Given the Womacks' lack of credibility at trial, and circumstantial evidence demonstrating their subjective intent to sell ME Interests, the Court is not "left with a firm and definite conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395. The Bankruptcy Court's finding that the debt is nondischargeable is, therefore, affirmed.

## CONCLUSION

For the reasons set forth above, the Court finds the Bankruptcy Court did not abuse its discretion in allowing Texas Capital Bank to amend its complaint. The Court further finds the Bankruptcy Court did not clearly err in determining the Womacks made fraudulent representations and committed actual fraud. The Court, therefore, **AFFIRMS** the Bankruptcy Court's finding that the debt owed by the Womacks to Texas Capital Bank is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

It is so ORDERED.
SIGNED this 7th day of July, 2023.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE